Louis E. **FAGAN** et al. (Lewis L. Gover,
Plaintiff No. 2)

v.

**UNITED STATES.**

No. 535–57.

United States Court of Claims.

May 4, 1960.

As Amended May 13, 1960.

Melville E. Locker, Washington, D. C., Friedman, Locker & Schlezinger, Washington, D. C., on the brief, for plaintiff.

LeRoy Southmayd, Jr., Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

LITTLETON, Judge (Ret.).

Lewis L. Gover is plaintiff No. 2 in the above entitled case of Fagan, et al. Gover will hereinafter be referred to as plaintiff.

Plaintiff, a retired officer of the Marine Corps, seeks to recover additional retired pay to which he claims he is entitled under applicable statutes and decisions of this court. Defendant has agreed that it is liable for a portion of the pay claimed as a result of the court's decision in the case of Gordon v. United States, 140 F.Supp. 263, 134 Ct.Cl. 840, but asserts that since April 1, 1955, plaintiff has been overpaid because of the Government's erroneous application of the law to plaintiff's retired pay status and that as a result of such overpayment, plaintiff owes the Government money for which defendant counterclaims.

A claim similar in most respects to the instant one was presented to the court in the case of Adams v. United States, Ct.Cl., 174 F.Supp. 952, decided July 13, 1959. The court decided that case adversely to plaintiff. Because the plaintiff herein has raised a number of arguments and referred the court to certain authorities not called to the attention of the court in the Adams case, supra, it has become necessary to reexamine the questions presented in some detail.

Plaintiff served on active duty as an officer in the United States Marine Corps from March 30, 1917, to September 30, 1938, when he was transferred to the retired list and given the retired pay of a major. On November 28, 1940, he was recalled to active duty and served until March 1, 1946, when he was returned to the retired list and given the retired pay of a major with approximately 27 years of active duty to his credit.

At the time of plaintiff's reretirement in 1946 it was not thought that officers in plaintiff's situation were entitled to the benefits of paragraph 4 of section 15 of the Pay Readjustment Act of 1942 (56 Stat. 359, 368), 37 U.S.C.A. § 115. That law granted to officers who had served in the military or naval forces prior to November 12, 1918, retired pay based on 75 percent of the officer's active duty pay at the time of his retirement. But because the statute referred to the officers as "hereafter retired", the military officials and the Comptroller General took the position that the "reretirement" of an officer who had first been retired prior to the effective date of the 1942 Act, thereafter recalled to active duty and, subsequent to the effective date of the 1942 Act, returned to the retired list, did not qualify such officer for the benefits of section 15. Accordingly, plaintiff was not given retired pay on the basis of 75 percent of his active duty pay at the time of his second retirement in 1946.

In 1949 Congress enacted the Career Compensation Act, 63 Stat. 802, and plaintiff, a nondisabled retiree who had been retired prior to the effective date of that act for reasons other than physical disability, came under the provisions of section 511, Title V, 37 U.S.C.A. § 311, which read in pertinent part as follows:

"On and after the effective date of this section [October 1, 1949] (1) members of the uniformed services heretofore retired for reasons other than physical disability * * * shall be entitled to receive retired pay * * * in the amount whichever is the greater, computed by one of the following methods: (a) The monthly retired pay * * * in the amount authorized for such member * * * by provisions of law in

effect on the day immediately preceding the date of enactment of this Act, or (b) monthly retired pay, * * * equal to 2½ per centum of the monthly basic pay of the highest federally recognized rank, grade, or rating, whether under a permanent or temporary appointment, satisfactorily held, by such member or former member, as determined by the Secretary concerned, and which such member * * * would be entitled to receive if serving on active duty in such rank, grade, or rating, multiplied by the number of years of active service creditable to him: * * *" [63 Stat. 829]

Title II of the Career Compensation Act of 1949 increased basic pay rates, and under the formula set forth in section 511(b) quoted above, those new basic pay rates were to be employed.

Pursuant to section 511 of the 1949 Act, it was determined by the Marine Corps officials in 1949 that plaintiff's retired pay under method (a), i. e., under laws in effect prior to the effective date of section 511, was less than it would be if computed under the formula set forth in method (b). Accordingly his retired pay was recomputed under method (b) utilizing the higher basic pay rates authorized by Title II of the 1949 Act. Plaintiff has been paid in accordance with that formula from 1949 to 1959. In 1952[1] and in 1955[2] new legislation increased the basic pay rates contained in Title II of the 1949 Act and those increases were reflected in plaintiff's retired pay because it was being computed under method (b) of section 511 of the 1949 Act.

Actually, the determination in 1949 that plaintiff's retired pay would be greater if computed in accordance with section 511(b) than if computed under method (a) of section 511 (old law), was erroneous as a matter of law. But it was not until after this court's decision in the Gordon case (April 3, 1956), supra, that the Comptroller General and the military service organizations recognized that section 15 of the 1942 Pay Readjustment Act was applicable to officers in plaintiff's situation. Accordingly, if paragraph 4 of section 15 of the 1942 Act had been recognized and applied as "law in effect on the day immediately preceding the date" of the enactment of the Career Compensation Act, plaintiff's retired pay under such prior law would have been greater than his retired pay computed under method (b) of section 511 of the 1949 Act. As a result of this error, plaintiff was underpaid from the date of his retirement in 1946 until April 1, 1955, the effective date of the Career Incentive Act of 1955. So much defendant concedes.

The Career Incentive Act of 1955, supra, which was not a retirement statute, increased for the second time since the 1949 Act, the basic active duty pay rates prescribed in Title II of the 1949 Act and, as a result of this increase in basic rates, plaintiff's retired pay computed under method (b) of section 511 of the 1949 Act was greater than it would have been had it been computed under method (a) of section 511 on the basis of 75 percent of the lower active duty pay rates prescribed by the 1942 Act as amended in 1946 and which rates were applicable to him at the time of his retirement in 1946.

It is plaintiff's first contention that he was underpaid by the use of method (b) of section 511 of the 1949 Act up to April 1, 1955, because his retired pay for that period would have been greater if the 1942 law in effect prior to October 1, 1949, had been properly applied to the computation of his retired pay, i. e., if computed under method 511(a). As we have said, defendant concedes this under Gordon, supra.

Plaintiff next contends that beginning on April 1, 1955, his retired pay *was*

1. Act of May 19, 1952, 66 Stat. 79.

2. Act of March 31, 1955 (Career Incentive Act of 1955), 69 Stat. 18, 37 U.S.C.A. §§ 232, 232 note, 235, 236, 253, 308, 233, 321a, 322a, 232 notes.

properly computed under method (b) of section 511 of the Career Compensation Act of 1949 because with the Career Incentive Act of 1955 increases in the basic pay rates prescribed in Title II of the 1949 Act, his retired pay computed under the method (b) formula was greater than his retired pay computed in accordance with method (a) even when the 75 percent factor authorized by section 15 of the 1942 Act was used and the 6 percent increase authorized by the 1955 Act was applied.

Actually, plaintiff's retired pay was computed under method (b) of section 511 of the 1949 Act from October 1, 1949, to some time in 1959 and his retired pay after April 1, 1955, reflected the increases in basic active duty pay rates granted by the Career Incentive Act of 1955. But when plaintiff requested the Comptroller General to reimburse him for the additional pay to which he was entitled under the Gordon decision, from 1949 to April 1, 1955, the Comptroller took the position that while plaintiff was entitled to the higher retired pay claimed up to April 1, 1955, under method (a) of section 511, the Career Incentive Act of 1955 had frozen plaintiff's retired pay in whatever method of computation was the correct one as of April 1, 1955, and that if his pay should have been computed under method (a) of section 511 of the 1949 Act on the day before the effective date of the 1955 Act, then it could not thereafter be recomputed under method (b). The Comptroller accordingly advised the plaintiff that after April 1, 1955, the continued computation of his retired pay under method (b) of section 511 of the 1949 Act had been in error and had resulted in overpayments which exceeded the amount by which plaintiff had been underpaid in the earlier period, and that plaintiff would have to refund the difference to the Government.

In order to understand the position taken by the Comptroller General, and adopted by defendant in this case, it is necessary to understand the Comptroller's view of the proper application of section 511 of the Career Compensation Act of 1949. This is best set forth in an opinion of the Comptroller General of July 17, 1957, and reported at 37 Comp.Gen. 31, 34:

"Section 511 of the Career Compensation Act, 37 U.S.C. § 311, does not provide for an election with respect to retired pay. Two methods of computing retired pay are there provided and retired members whose rights are governed by such provisions of law are entitled to have their retired pay computed by the method which produces the greater amount of retired pay. After receiving retired pay computed by one method, if conditions change in such a manner that a retired member's pay would increase by computing his retired pay under the other method, such recomputation was authorized and required under section 511 without any election on his part. 29 Comp.Gen. 404, 407–408 [1950]."

Before discussing the Comptroller General's interpretation of the proper application of section 511 of the 1949 Act, we shall refer briefly to this court's decision in the Adams case, supra, in which the plaintiff made a claim for additional retired pay which was identical in most respects to the instant claim but where the legal basis advanced to support the claim was quite different. Adams, like plaintiff herein, had been retired prior to October 1, 1949, and as of October 1, 1949, the Navy Department determined that his retired pay would be greater if computed under method (b) of section 511 of the Career Compensation Act than if computed under laws in effect prior to October 1, 1949. Adams' retired pay was accordingly computed under method (b) from October 1, 1949, up to March 31, 1957. As a result of this court's decision in Abad et al. v. United States, 1956, 144 F.Supp. 951, 136 Ct.Cl. 404, it developed that if the proper pre-1949 law had been applied to the computation of Adams' retired pay as of October 1, 1949, his pay computed by that method (method (a) of section 511),

would have been greater than it was when computed under method (b). In 1957 Adams asked the Navy Department to recompute his retired pay under method (a) and give him the additional pay due him under the Abad decision. The Navy Department conceded that Adams' pay had been improperly computed under method (b) as of October 1, 1949, and that he had been underpaid up to April 1, 1955. The Navy Department then stated that because Adams' retired pay should have been computed under method (a) as of October 1, 1949, it should have continued under such method at all times thereafter; that while the error of computing his retired pay under method (b) had resulted in underpayments up to April 1, 1955, the increases in basic active duty pay rates applicable to method (b) under the 1955 Act had resulted in his receiving too much retired pay after April 1, 1955, and that the amount of such post-April 1, 1955, overpayments should be offset against the amount due Adams for the earlier period.

In his suit in this court, Adams and the Government took the position that as of October 1, 1949, a longevity retiree's retired pay computation under section 511 of the 1949 Act became fixed in the method of computation, either (a) or (b), which on that date resulted in the highest retired pay. The Comptroller General's interpretation of section 511 and the long administrative practice of the military services regarding automatic recomputations under section 511 methods (a) and (b) were not referred to by either party. Because the use of the wrong method of computation, i. e., method (b) employed between October 1, 1949, and April 1, 1955, became more advantageous to plaintiff upon the enactment of the 1955 Career Incentive Act, plaintiff urged merely that he should be allowed to waive his right to receive the additional retired pay concededly due him prior to April 1, 1955 (after recomputation under method (a)), in order to continue to be paid under method (b), which, after April 1, 1955, resulted in

higher retired pay than his method (a) retired pay. In the alternative, plaintiff argued that if he could not waive a portion of his claim, then it was not right for the Government to recover back from him excess retired pay erroneously given him after April 1, 1955, under a "mutual mistake of law." As stated above, it was never suggested by either party that section 511 of the 1949 Act required automatic recomputations of retired pay under the two methods therein prescribed when conditions changed to render such recomputations more advantageous to longevity retirees. Defendant's only reference to recomputations was to suggest in its brief that in considering the 1955 legislation Congress had rejected a proposal to grant *for the first time* a right to recomputation under section 511. We note that in its brief filed in the instant case shortly after the filing of its brief in the Adams case, the Government seems to have been fully aware of the Comptroller General's interpretation of section 511 regarding recomputations and of the practice of the military departments up until late in 1957 of making such recomputations. On the basis of the issues presented and the arguments urged in the Adams case, the court held that plaintiff could not waive his right to additional retired pay up to April 1, 1955, in order to secure greater benefits under a method of computation which he conceded was wrong. The correctness of the Comptroller General's interpretation of section 511 and the possible effect of the 1955 Act on section 511 were never raised in the Adams case and the court did not pass upon those matters. In the instant case those matters are basic to plaintiff's claim. It has thus become necessary to reexamine the entire matter in the light of the new contentions by both parties.

We are of the opinion that the Comptroller General was correct in his interpretation of section 511 of the Career Compensation Act of 1949. The language of the section bears out his interpretation particularly when read in the context of the whole statute. The

Career Compensation Act was *not* a retirement statute for nondisabled longevity retirees. Entitlement to longevity retirement was, before and after the enactment of that statute, contained in other laws. The 1949 Act did two things with respect to such nondisabled longevity retirees. It gave those who had retired prior to the effective date of the act the right to have their retired pay computed on the basis of the new method prescribed in section 511(b) using the increased basic pay rates of Title II of the act, if that method resulted in greater retired pay than they were already receiving under methods prescribed in earlier laws and, as to nondisabled officers and men who were retired subsequent to October 1, 1949, it required that the retired pay granted to them by other statutes reflect the higher basic rates of Title II of the 1949 Act.[3] This was not the case with disabled retirees, for whom this 1949 Act was a retirement statute. Title IV of the 1949 Act established new and more difficult criteria for entitlement to disability retirement for anyone retired for physical disability after the effective date of the act, the most important of which was the requirement that a person be at least 30 percent disabled. As for persons already retired for disability and receiving disability retired pay under prior laws requiring only a determination that the person was incapacitated for military service, the 1949 Act provided a 5-year period during which the pre-1949 disabled retiree might elect to qualify under Title IV of the 1949 Act and, if qualified, to receive the disability retired pay provided for in that act and computed on the basis of the new increased basic pay rates contained in Title II of that act. However, unless a person was more than 60 percent disabled, it was unlikely that he would receive as much under Title IV of the 1949 law as he was already receiving under old law and many elected to retain old law pay.

■ While in the 1949 Act there was no congressional inclination to reduce the disability retired pay of persons already retired, it was clear that Congress intended that only those prior retirees with substantial disabilities should have their retired pay increased as a result of the higher basic rates contained in the 1949 Act. With respect to nondisabled longevity retirees, there was no Congressional intention to treat differently those who had retired before or after the effective date of the Career Compensation Act of 1949 because such longevity retirees were all retired under laws other than the 1949 Act and those laws would require the same number of years of service, etc. for persons in the same categories both before and after the effective date of the 1949 statute. There is nothing in the legislative history of the act which indicates that Congress intended the retired pay of previously retired longevity retirees to be frozen in one of the two methods prescribed in section

3. In the computation of retired pay under most retirement statutes, active duty pay rates in effect on the date of a person's retirement are one of the factors. When, under subsequent legislation, the active duty rates are increased, such increases are automatically reflected in the retired pay of any one retiring *after* the effective date of such increases. The increases will not ordinarily be reflected in the retired pay of persons retiring prior to the effective date of the increase unless the new pay statute so provides, as it usually does. Thus, when the Pay Readjustment Act of 1942 was amended in 1946 (60 Stat. 343, 345) to provide for increased basic active duty rates, the act provided that those increases should apply to and be reflected in the retired pay of persons previously retired. When the 1949 Career Compensation Act further increased basic active duty pay rates in Title II, section 511 of that act required that previously retired personnel be paid either under the 1942 Act rates as increased in 1946, or by a new method of computation contained in section 511(b) and using the increased 1949 Act rates, depending on which method resulted in the greater retired pay. Persons retiring after the effective date of the 1949 Act would be retired under laws in effect prior to that date, but their retired pay would reflect the 1949 Act increases in basic pay.

511 as of the effective date of the section. Furthermore, the language of the section, i. e., "On and after the effective date of this section * * * members * * * heretofore retired * * * shall be entitled to receive retired pay * * * in the amount whichever is the greater, computed by one of the following methods: * * * " seems to us to clearly support the Comptroller General's interpretation that after the effective date of the act a previously retired member's longevity retired pay must be recomputed under the method which might, upon a change in conditions, result in higher retired pay.

██ We now turn to the problem of whether or not the Career Incentive Act of 1955 terminated the right to recomputations granted in section 511 of the 1949 Act and thus had the effect of freezing on April 1, 1955, the method in which a retired member's pay was being computed on that date. The Comptroller's opinion that the 1955 Act had such an effect is based to a very slight extent on the language of two sections of that act, i. e., primarily on the use of the word "now." The opinion relies much more heavily on the legislative history of the two sections in question. Sections 5 and 6 of the Career Incentive Act of 1955 with the words relied on by the Comptroller italicized, reads as follows:

"Sec. 5. Any person *now* or hereafter entitled to retired pay, retirement pay, retainer pay, or equivalent pay (including persons entitled to temporary disability retirement pay) computed at the rates prescribed in section 201(a) of the Career Compensation Act of 1949 shall be entitled to have his pay computed at the rates prescribed by that section, as amended by this Act. For the purposes of that computation, an officer with less than three years of service for pay purposes, or a warrant officer or an enlisted person with less than two years of service for pay purposes, retired for physical disability or placed on the temporary disability retired list, shall have those rates increased by 6 per centum.

"Sec. 6. Members and former members of the uniformed services who are entitled to receive retired pay, retirement pay, retainer pay, or equivalent pay under laws in effect prior to October 1, 1949, shall be entitled to an increase of 6 per centum of the retired pay, retirement pay, retainer pay, or equivalent pay, to which they are *now* entitled." [Italics supplied.]

Under the Comptroller's own interpretation of section 511 of the Career Compensation Act, those "persons", referred to in section 5 above, who, on the effective date of the 1955 Act, were *"now * * * entitled to retired pay * * * computed at the rates prescribed in section 201(a) of the Career Compensation Act of 1949"* were not only those persons whose pay was, on March 31, 1955, being computed on the basis of section 201(a) rates because they were retired for longevity *after* October 1, 1949, but also those persons retired for longevity *before* October 1, 1949 who, under the wording of section 511, would become entitled to use such 1949 increased basic pay rates in the method (b) computation whenever conditions changed so that such computation resulted in higher retired pay. Section 5 of the 1955 Act does *not* refer to "any person *now being paid* retired pay computed at the rates prescribed in section 201(a) of the Career Compensation Act of 1949". It refers to persons *"now entitled to* retired pay"* computed at those rates. Assuming that "now" speaks of the effective date of the 1955 Act, plaintiff was "now" entitled to have his pay computed under the formula contained in method (b) of section 511 of the 1949 Act because, with the increases provided in the 1955 Act to the basic pay rates of Title II of the 1949 Act, that method (b) computation resulted in greater retired pay than method (a), i. e., the 1942 law, as amended in 1946, in effect prior to October 1, 1949. Accordingly, on the literal language of section 5, it is difficult to

see how plaintiff's right to automatic recomputations was cut off. Assuming that plaintiff's retired pay was being computed properly under the 1942 statute and utilizing pre-1949 basic pay rates as of April 1, 1955, he was then entitled to have his retired pay recomputed under the 1949 Act rates as increased by the amendments to those rates in the 1955 Act because section 511 of the 1949 Act entitled him to such recomputation when it resulted in higher retired pay, and nothing in the language of section 5 of the 1955 Act cut off that right.

The Comptroller General's greatest reliance is placed not on the language of sections 5 and 6 of the 1955 Career Incentive Act, but on portions of the legislative history. The Comptroller General has this to say respecting this legislative history:

"That general interpretation of section 511 [right to automatic recomputations under methods (a) and (b)] does not apply, however, to the increases in pay authorized in the Career Incentive Act of 1955, 69 Stat. 18, 37 U.S.C. § 232 note. When that legislation was proposed in H.R. 2607, 84th Congress, section 2(13) of that bill would have extended the time for making an election under section 411 to 'two years after the effective date of the Career Incentive Act of 1955,' and with respect to persons whose retired pay was then being computed under method (a) of section 511 (under laws in effect prior to October 1, 1949), section 2(15) would have permitted recomputation under method (b) if that recomputation provided a greater amount of retired pay. The legislation finally enacted into law as the Career Incentive Act of 1955 omitted such provisions and the legislative history of that act shows that the Congress was not agreeable to any further elections under section 411 or recomputations of retired pay under section 511. See pages 672 and 673 [sic] on the Hearings on H.R. 2607 before Sub-committee No. 2 of the Committee on Armed Services, House of Representatives, page 203 on the Hearings on H.R. 4720, 84th Congress (the bill ultimately made into law) before the Senate Committee on Armed Services and page 10, House of Representatives Report No. 90, to accompany H.R. 4720.

\* \* \* \* \* \*

"The increase in retired pay authorized in such provisions of law are clearly based on the retired pay *which was being paid* to retired members at the time of enactment of that act [the Career Incentive Act of March 31, 1955]. See in this connection the discussion of sections 5 and 6 appearing on page 19, Senate Report No. 125, to accompany H.R. 4720, where reference is made to an increase in the retired pay to which a member 'presently' is entitled (section 5) and to a 6 percent increase in 'present' retired pay (section 6)." [Italics and material in brackets supplied.]

We have examined the specific legislative history referred to by the Comptroller General and by the defendant in its briefs in this case and, in addition, we have studied the hearings in the House and Senate Committees and the reports on both bills and we are of the opinion that it does not support the conclusions reached by the Comptroller General.

In February of 1955, Subcommittee No. 2 of the House Committee on Armed Services, commenced hearings on H.R. 2607, a bill drafted by the Department of Defense. Primarily the bill was intended to increase basic pay rates for active duty service in the military services and to further carry out the philosophy of the Hook Commission and the Career Compensation Act to base military pay on the responsibility assumed and the service rendered by military personnel. In addition, H.R. 2607 contained amendments to section 411 of the Career Compensation Act of 1949 relating to disability retired pay, and to section 511

of that act relating to the computation of longevity retired pay of members retired prior to October 1, 1949. Neither of these amendments was enacted into law and it is the failure of Congress to enact these amendments that has so greatly influenced the Comptroller General and defendant in arriving at their interpretations of sections 5 and 6 of the 1955 Act.

In connection with the two provisions in the Defense Department bill which were intended to amend sections 411 and 511 of the 1949 Career Compensation Act and which were not enacted into law, most of the committee discussions in the Congress related to section 2(13) which provided for a new two-year election period for pre-1949 disabled retirees. When it was realized that this new election period would benefit very few such retirees and that the remainder would, under the bill as then written, receive no pay increase whatever, the provision was dropped and in its place section 6 was adopted as an amendment to give such pre-1949 disabled retirees receiving retired pay authorized by laws in effect prior to October 1, 1949, a 6 percent increase in retired pay. Section 6 provided as follows:

> "Members and former members * * * who are entitled to receive retired pay, retirement pay, retainer pay, or equivalent pay under laws in effect prior to October 1, 1949, shall be entitled to an increase of 6 per centum of the retired pay * * * to which they are now entitled."

This provision clearly granted a 6 percent increase in pay to those disabled retirees retired prior to October 1, 1949, who either could not or did not elect by October 1, 1954, to qualify for retired pay under the new formulae authorized by Title IV of the Career Compensation Act. In addition, as hereinafter more fully explained, longevity retirees such as plaintiff whose retired pay under section 511(a) (pre-1949 pay laws)[4] was greater than it would have been under section 511(b) of the 1949 law,[5] were entitled to a 6 percent increase in their retired pay under the provisions of section 6 of the 1955 Act. But if such retired pay so increased by that 6 percent was less than retired pay computed under section 511(b) using the 1955 Act increases in the 1949 Act Title II basic pay rates, then the retiree would be entitled to receive that greater retired pay *under the specific language of section 511* of the 1949 Career Compensation Act.

■ The House Subcommittee also dropped section 2(15) of the Defense Department bill, H.R. 2607, purporting to amend section 511 of the Career Compensation Act to guarantee recomputations of retired pay under method (b) to those longevity retirees whose pay was then being computed under method (a), if such recomputation resulted in increased retired pay. We are of the opinion that it was omitted because section 511 of the 1949 Act already gave the right to recomputation described in section 2(15) of the proposed bill without the need for further legislation. There was actually no real discussion at the hearings of section 2(15) of the proposed Career Incentive Act of 1955, and no discussion of section 511 of the Career Compensation Act which it purported to amend.

From a study of the Senate and House hearings and reports relative to the applicability of the increased 1949 Act basic pay rates contained in the 1955 Act to retired pay, it appears to us that Congress was primarily concerned with what to do about disability retirees retired prior to October 1, 1949, whose right to elect under section 411 of the 1949 Act had expired. Congress was also concerned with the situation of persons retired for disability subsequent to October 1, 1949, under Title IV of the Career Compensation Act, but who had served

---

4. Based on 1942 Act basic pay rates as increased in 1946 and 1952.

5. Based on the new basic pay scale of Title II of the 1949 Act as increased in 1952.

478

on active duty for short terms before becoming disabled. The legislative history reveals that Congress intended to take care of the latter group in the second sentence of section 5 of the 1955 Act by giving such disabled retirees with short terms of active service subsequent to October 1, 1949, a 6 percent increase in retired pay; and that they took care of the former group who had not qualified or elected to qualify under the provisions of Title IV of the 1949 Act for disability retirement with pay, by giving them a 6 percent increase in retired pay. Congress was not concerned with nondisabled longevity retirees and it indicated no intention to depart from its usual custom of giving them the benefit of active duty pay increases.

If section 5 of the 1955 Act had said that "Any person *now receiving* retired pay computed at the rates prescribed in section 201(a) [method (b) of section 511] of the Career Compensation Act of 1949 shall have his retired pay recomputed at the rates prescribed by that section as amended by this act", there might be more justification for the interpretation of the section urged by the Comptroller General and defendant. But the section does not so read. It reads: Any person *now or hereafter entitled to* retired pay * * * computed at the rates prescribed in section 201(a) of the Career Compensation Act of 1949 shall be entitled to have his pay computed at the rates prescribed by that section, as amended by this Act." Plaintiff was "now", i. e., on the effective date of the 1955 Act, "entitled to have his pay computed at the rates prescribed" by section 201(a) of the 1949 Act, as amended, if such computation resulted in greater retired pay than his retired pay would be computed under methods prescribed by other applicable laws. That is what we think section 511 of the Career Compensation Act says and the Career Incentive Act of 1955 did not amend section 511 of the 1949 Act. The fact that Congress failed to adopt the Defense Department recommendation contained in section 2(15) of H.R. 2607 to guarantee the

continued right to recomputations under methods (a) and (b) of section 511, does not warrant the inference that Congress intended to deny the right to further recomputations under section 511 of the 1949 Act to longevity nondisabled retirees. 'Such non-action by Congress affords the most dubious foundation for drawing positive inferences." United States v. Price, 361 U.S. 304, 310, 311, 80 S.Ct. 326, 330, 4 L.Ed.2d 334 (January 18, 1960).

Congress cut off the right to recomputations granted by section 511 of the 1949 Act in the Act of May 20, 1958. (72 Stat. 122, 128, Public Law 85–422.)

For example, section 3(a) of the 1958 Act, 37 U.S.C.A. § 232 note, provides as follows:

"Notwithstanding any other provision of law, except sections 4 and 7 of this Act and subsection (b) of this section, the changes in rates of basic pay made by this Act do not increase the amount of retired pay * * * to which any person *is entitled on the day before* the effective date of this Act." [Italics supplied.]

Section 3(b) permitted recomputation of retired pay on the basis of the increased basic pay rates of the 1949 Act amended by the 1958 Act if such person mentioned in section 3(a) was recalled to active duty, served for at least one year and then was reretired on or after the effective date of the 1958 Act. Section 4(b), 10 U.S.C.A. § 1401 note, provided that any person retired on the effective date of the act should have his retired pay computed on the basis of the rates of pay contained in the Career Compensation Act as amended by the 1958 Act, or on the basic pay rates of the 1949 Act in effect on the day before the effective date of the 1958 Act plus 6 percent, whichever resulted in the greater retired pay. Subsection (c) of section 4 of the 1958 Act provided that Section 5 of the Career Incentive Act of 1955 should not apply to any person who was retired *after the effective date of the 1958 Act.* In the case

of the 1958 Act, the legislative history makes it quite clear that Congress did not intend the new rates to apply to persons retired prior to the effective date of the act, with some exceptions. In the course of the Senate Hearings on the 1958 Act, a witness, speaking of men who under section 511 of the Career Compensation Act, were receiving their retired pay computed under method (a) until 1955 because that method resulted in greater retired pay than the formula set forth in method (b) using the 1949 Act rates, stated:

"These men continued to receive saved-pay benefits under the 1952 Pay Act, which amended the Career Compensation Act of 1949. With the enactment of the 1955 Career Incentive Act, however, the men who were drawing retirement pay under the provisions of the saving clause in the previous amendment to the Career Compensation Act of 1949 had their retirement pay recomputed under the provisions of the higher rates of the 1955 Career Incentive Act. Now, almost 3 years later, the Comptroller General, in auditing retired-pay accounts, has ruled that these men who were drawing higher benefits under saved-pay laws in effect prior to the enactment of the Career Incentive Act of 1955 are not entitled to have their retirement pay recomputed on the rates of the 1955 act. Accordingly, he has directed disbursing officers to recover what he has stated to be overpayments \* \* \* in the period since April 1, 1955." [p. 672, Senate Hearings before a Subcommittee on Armed Services, U.S.Senate, 85th Congress, S. 2014.]

At the hearings on H.R. 9979, it was stated that unless sections 3 and 4 of the 1958 Act were specific on the right to recomputation of retired pay under the increased rates of the 1958 Act, present law required that *longevity* retired pay should be computed at rates applicable on dates of retirement adjusted to reflect any later changes in applicable perma-nent rates. [Page 5590 of Hearings before Subcommittee No. 2 of the Committee on Armed Services, House of Representatives, on H.R. 9979.]

We do not refer to the 1958 Act and its legislative history for the purpose of indicating what that Congress thought an earlier Congress intended when it enacted the 1955 Career Incentive Act. It is clear, however, that in 1958 the Congress considered the matter of recomputations under methods (a) and (b) of section 511 of the 1949 Act and it permitted such recomputations under the increased 1958 Act rates in some instances and denied such recomputations in others.

We are of the opinion that under the language of section 5 of the Career Incentive Act of 1955 plaintiff, as a person entitled, by virtue of section 511 of the 1949 Act, to have his pay computed on the basis of the 1949 Act rates (method (b)) if that should result in greater retired pay, became entitled to have his pay computed on the basis of those rates as amended and increased by the 1955 Act. The fact that plaintiff's retired pay was or should have been computed at old law rates (method (a)) from the time of his retirement up to and including the effective date of the 1955 Act, is immaterial because we can see nothing in the language or legislative history of the 1955 Act which cuts off plaintiff's section 511 right to recomputation when conditions were changed by the enactment of the 1955 Act in such a way as to make method (b) of section 511 more advantageous to him. Any cut-off of the right to recomputations under section 511 of the 1949 Act or any freezing of plaintiff's pay in a particular method of computation may have occurred in 1958 as a result of the Act of May 20, 1958, but it did not occur as a result of the Career Incentive Act of 1955. While the decision in this case reaches a different result with respect to the claim for additional retired pay than was reached by the court in Adams, supra, it does not, in a true sense, overrule the decision in

Adams because that decision was rendered on entirely different legal arguments which, it now appears, were not germane to the claim. Plaintiff is entitled to recover and judgment will be entered to that effect. The defendant's motion for summary judgment is denied. Defendant's counterclaim is dismissed. Plaintiff's motion for summary judgment is granted. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.

MADDEN, Judge, took no part in the consideration and decision of this case.