Per Curiam:
This case was referred to Trial Commissioner Harry E. Wood with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 184(h). The commissioner has done so in an opinion and report filed on April 19, 1972. Defendant filed a notice of intention to except to the opinion and report but on July 19, 1972, filed a withdrawal of said notice. On July 21, 1972, plaintiffs filed a motion for judgment in their favor on the basis of the commissioner’s report. Since the court agrees with the commissioner’s opinion, findings of fact and recommended conclusion of law, as herein *689 after set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Therefore, it is concluded that each plaintiff is entitled to recover retired pay computed on the basis of the basic pay rates effective July 1 of the year in which he was retired and judgment is entered accordingly with the amounts of recovery to be determined in further proceedings pursuant to Eule 131(c).
OPINION op Commissioner
Wood, Commissioner:
In this action, plaintiffs, 18 Eegular Coast Guard captains retired in 1968 or 1969 under essentially similar circumstances, seek to recover increased retired Pay.
Each plaintiff completed 30 years of active commissioned service in the Coast Guard in either 1968 or 1969. Each was within the purview of 14 U.S.C. § 288(a) (1964), providing that he “shall, if not earlier retired, be retired on June 30 of the fiscal year” in which he completed 30 years of such service. Each was also qualified for voluntary retirement under either 14 U.S.C. § 291 (1964) or 14 U.S.C. § 292 (1964).[1]
According to the Coast Guard’s records, 13 plaintiffs were voluntarily retired (some in 1968 and some in 1969) pursuant to Section 291 or Section 292. The Coast Guard’s records also reflect that five plaintiffs were retained on active duty, to varying dates in 1968 or 1969 after July 1, for medical evaluation; that four of them were temporarily retired for physical disability (two after July 1, 1968, and two after.July 1, 1969); and that the remaining plaintiff was voluntarily retired pursuant to Section 292 after July 1,1968.
Effective July 1, 1968, and again effective July 1, 1969, the rates of basic, or active duty, pay theretofore in effect were adjusted upward.[2] Subsequent to his retirement, how *690 ever, each plaintiff has been paid retired pay computed only on the basic pay rates in effect on June 30 of the year in which he was retired. Plaintiffs contend that each of them is entitled to utilize the appropriate new, and higher, rate of basic pay in the computation of his retired pay.
The relevant facts are set forth, in some detail, in the accompanying findings. On analysis, the circumstances surrounding plaintiffs’ retirements, though not in all cases identical, fall into two general classes. The facts of plaintiff Tug’s situation typify the first, and those of plaintiff Chester’s the second.
Both plaintiff Ing and plaintiff Chester completed 30 years of active commissioned service in the Coast Guard in the fiscal year ending June 30, 1968. Both were (a) subject to mandatory retirement pursuant to Section 288 (a) “on June 30 * * *” 1968, and (b) also qualified for voluntary retirement pursuant to Section 291 or Section 292. In February 1968 the Coast Guard advised each of them that he would be mandatorily retired on July 1, 1968. Each thereafter requested voluntary retirement.
In June 1968, plaintiff Ing received orders stating in part that pursuant to Section 291 he was detached from all duties effective June 30, 1968.[3] Plaintiff Chester, however, was retained on active duty following June 30, 1968,[4] underwent medical evaluation, and in November 1968 received orders stating in part that, pursuant to Chapter 61, Title 10, United States Code (Retirement or Separation for Physical Disability), he was “hereby detached from all duties at this command effective [November 30, 1968] and * * * to be placed on the Physical Disability Temporary Retired List effective 1 December 1968 * *
The broad issue is whether those plaintiffs subject to mandatory retirement under Section 288(a) “on June 30 * * but also entitled to voluntary retirement under Section 291 or Section 292 and purportedly so retired on June 30, may *691 utilize the basi'c pay rates effective July 1 in computing their retired pay. The pivotal one, more precisely stated hereinafter, is most narrow.
For reasons set forth below, it is concluded that such plaintiffs are entitled to recover. It is therefore unnecessary to treat separately those plaintiffs retained on active duty after June 30 for medical evaluation and purportedly retired after July 1, for physical disability or otherwise,[5] for they seek only a like result, and pursuant to the foregoing conclusion they are plainly entitled to it.
In 1958 and 1963, Congress departed from the theretofore existing general practice of “retired-pay-based-on-active-duty-pay * * *” under which most retired officers benefited directly “from any pay increase given to an officer of like rank serving on active duty.” Akerson, et al. v. United States, 175 Ct. Cl. 551, 553, cert. denied, 385 U.S. 946 (1966) ; cf. Fagans, et al. v. United States, 149 Ct. Cl. 716, 277 F. 2d 469 (1960). That scheme was superseded by a broad legislative “policy of computing retired pay on active duty pay rates in effect at the time of retirement * * *”[6] with, generally speaking, increases in post-retirement pay dependent upon increases in the cost of living.[7]
The seeming simplicity of that “policy” is deceptive. Over the last several years, the question “whether a member who retires on the effective date of an increase in active duty pay rates will be eligible to compute his retired pay on the new *692 rates of active duty pay * * *” [8] in lieu of the old ones, has frequently arisen, and its solution has been neither simple nor uniform. E.g., “Where the effective date of a retirement coincides with an increase in active duty pay, the rate of retired pay may be dependent upon the specific provision of the particular retirement law involved, the nature of the retirement (voluntary or involuntary), and the provisions of the Uniform Retirement Date Act * * [9]
Comp. Gen. Dec. B-165038, June 2, 1969 (unpublished), concerning plaintiff Chester and five other Coast Guard officers, all subject to mandatory retirement on June 30, 1968, is illustrative of the complexity of the problem, and of the fine distinctions determinative of individual rights.
One such officer was a rear admiral. In February 1968 he was advised of his impending mandatory retirement, pursuant to 14 U.S.C. § 290 (1964), “on June 30 * * *” 1968. He subsequently requested voluntary retirement under Section 292. In June 1968, orders were issued which, the Comptroller General stated, “had the effect of retiring him on July 1, 1968, under 14 U.S.C. 292.” (Emphasis supplied.)
Another was a lieutenant commander who, after advice that he would be detached from duty on June 30, 1968, for failure of selection for promotion, under 14 U.S.C. § 285 (1964), requested voluntary retirement under Section 291. That request was approved by the Coast Guard, and orders were issued retiring him “on July 1, 1968 * * (Emphasis supplied.) At that time, the lieutenant commander had over 23 years of active service. Another was a commander, situated precisely as the lieutenant commander save for the fact that on June 30, 1968, the commander had only 20 years and 9 days of active service.
*693 The three other officers were plaintiff Chester, a rear admiral, and a commander. All were subject to mandatory retirement on June 30, 1968. All were also eligible for, and requested, voluntary retirement. All were retained on active duty beyond June 30,1968, for medical evaluation. The rear admiral, and plaintiff Chester, were placed on the temporary disability retired list subsequent to July 1, 1968. The commander was retired, under Section 291, “effective August 1, 1968." (Emphasis supplied.)
The Comptroller General held that the rear admiral and the lieutenant commander who were voluntarily retired might utilize the July 1,1968, basic pay rates in the computation of their retired pay. The commander so retired after 20 years and 9 days of service was, however, denied that right. The rationale was that the first two were “in fact retired under voluntary retirement statutes at a time other than when they first became eligible therefor and the provisions of law under which they were otherwise required to be retired permitted them to be retired under a voluntary retirement statute at that time.” The commander, however, “first became qualified for retirement * * * during the month of June 1968 [when he completed 20 years of active service] and began receiving retired pay on July 1,1968, the earliest date he could have received retired pay under the Uniform Retirement Date Act * * and was therefore limited to retired pay computed on the basic pay rates in effect June 30,1968.[10]
Both the rear admiral and the commander retained on active duty after June 30,1968, for medical evaluation, and subsequently retired, were deemed entitled to utilize the rates of basic pay effective July 1,1968, in computing their retired pay. Plaintiff Chester was not. His retired pay, it was held, had to be computed on the basis of June 30, 1968, basic pay rates.
The relevant grounds underlying these differing consequences, as gleaned from the Comptroller General’s rulings *694 with respect to plaintiffs Ing and Chester and from other rulings involving essentially the same question as it affects members of other components of the armed forces, appear to be several: (1) that at least some officers subject to mandatory retirement on Jwne SO can lawfully be retired voluntarily effective July 1, at least for retired pay computation purposes; (2) that the “if not earlier retired” portion of Section 288(a) precludes the voluntary retirement of a Coast Guard captain “on June 30 * * and that such an officer retired on Jwne 30 is retired effective Jwne SO, at least for retired pay computation purposes; and (3) that the Coast Guard’s failure to retire any plaintiff “on June 30 * * *” could not and “did not add to his rights in any way in computing the amomit of retired pay to which he was entitled.”
Stated another way, but for the Comptroller General’s conclusion that Section 288(a) precluded plaintiffs from voluntary retirement “on June 30 * * *” 1968 (or June 30, 1969), the validity of the claims in suit would have been recognized, and the increased retired pay here sought would have been paid administratively. In essence, plaintiffs’ position is that that holding is erroneous.
Defendant does not here question the principle, by now well established through repeated rulings of the Comptroller General, that if voluntarily retired “on June 30 * * *” an officer subject to mandatory retirement on that same day is retired effective July 1, and entitled to retired pay based on July 1, rather than June 30, basic pay rates. Defendant’s position is, rather, that for reasons above stated, plaintiffs are not within its purview. Given that principle, however — and no reason independently to reject it appears — plaintiffs are entitled to its favorable consequences.
Section 288 was enacted into law as part of the Act of September 24, 1963, 77 Stat. 174. By way of background, the 1963 act resulted from a draft prepared by the Coast Guard, and Section 288 as so drafted was enacted into law with only inconsequential change. See H.R. Rep. No. 583, 88th Cong., 1st Sess. (1963); S. Rep. No. 476, 88th Cong., 1st Sess. (1963).[11] One motivation for the act was existing or immi *695 nent stagnation in promotions to tbe grades of commander and captain, and one purpose was to relieve the problem by forced attrition.
The crucial consideration is whether an officer who must, if not earlier retired, foe retired “on June 30 * * *” is thereby precluded from retiring voluntarily, pursuant to Section 291 or Section 292, on that same day. Neither the literal language of the 1963 act nor its legislative history answers that question clearly and definitively. However, several factors militate strongly against reading Section 288(a) as effecting any such implicit limitation upon the broad rights conferred by Sections 291 and 292.
In enacting Section 288(a), Congress simultaneously reaffirmed that any regular commissioned officer of the Coast Guard meeting the terms of either Section 291 or Section 292 (and it is undisputed that plaintiffs satisfied the requirements of both) could retire voluntarily.[12] Indeed, as Comp. Gen. Dec. B-165038, supra, reflects, most Coast Guard officers subject to mandatory retirement “on June 30 * * *” are afforded the right to retire voluntarily on that same day.
One of the fundamental purposes of the 1963 act was to facilitate the orderly flow of promotions. To this end, Congress decided that a captain not selected for promotion to rear admiral should leave active service on June 30 of the fiscal year in which he completed 30 years of active commissioned service. There is, however, no clear expression of intent either to force such an officer out on that day in only one manner, or to discriminate by treating him less favorably than another Coast Guard officer of lesser, or greater, rank, and such an intent cannot fairly foe imputed to Congress.
In the light of the clear purpose of Section 288 (a), and of the provisions of Sections 291 and 292, the words “shall, if not earlier retired, be retired on June 30 * * *” are reasonably to be interpreted to mean that such an officer’s retirement must occur no later than June 30, if earlier retirement, for whatever cause, has not obviated the necessity for retirement on *696 June 30,[13] and not as absolutely forbidding voluntary retirement pursuant to Section 291 or Section 292 on that terminal date.
Both the total absence of any logical reason for decision, in Section 288(a), that a Coast Guard captain could retire voluntarily (or for physical disability) prior to, but not on, June 30 of the fiscal year in which he completed 30 years of active commissioned service, and that Coast Guard lieutenant commanders, commanders, and rear admirals subject to mandatory retirement “on June 30 * * *” pursuant to other sections of the 1963 act have the right to retire voluntarily on that date, confirm this view. In the circumstances, a contrary conclusion would attribute “to Congress a desire for incoherence in [a single unified enactment] * * * and for drastic legal differentiation where policy justifies none.” Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 394 (1939).
Defendant’s argument that the wording of 14 U.S.C. § 248 (1958) “is essentially the same as the pertinent language of 14 U.S.C. 288 * * *”[14] serves further to solidify the conclusion expressed above. Section 248 (repealed by the 1963 act), providing in pertinent part that “unless retired under some other provision of law * * * [certain Coast Guard captains] shall be retired on June 30 * * clearly would not have precluded voluntary retirement, pursuant to the predecessors of Sections 291 and 292 then in force, on that same date.
Plaintiffs also rely upon an asserted longstanding Congressional policy entitling a member subject to involuntary retirement to retired pay “computed under the retirement most favorable to the retired member under any law, including voluntary retirement * * [15] They contend that *697 that policy is incorporated in 14 U.S.C. § 424 (1964),[16] in force unchanged in 1968 and 1969, and therefore governing here.[17]
The conclusion stated hereinabove makes it unnecessary to reach either this contention or plaintiffs’ further arguments respecting “surplusage” in Section 288, and that in any event the effective date of a retirement under Section 288 is July 1, the first day of receipt of retired pay, for purposes of computing retired pay.
It should be noted that, in reaching that conclusion, defendant’s reliance on Section 3 of the 1963 act has not been overlooked. The precise argument is that Sections 3 (Z), (n), and especially (q) of the 1963 act disclose a legislative intent to preclude plaintiffs’ voluntary retirement on June 30.
Section 3 was an interim provision, authorizing for a limited time the convening of “continuation” boards. Section 3 (Z) provided that an officer considered but not recommended for continuation on active duty should, “unless earlier retired under some other provision of law * * be retired on June 30 of the fiscal year in which the report of the board was approved, or on the last day of the month in which he completed 20 years of service, whichever should be the later.
Section 3(n) provided that, for purposes of a lump-sum payment, one required to be retired “under this section” would be deemed retired thereunder even if he retired “voluntarily prior to the date specified for his retirement under this section.” Section 3(q) provided that one who “either retires under this section, or voluntarily retires under another provision of law before the date specified for his retirement under tins section”, might, provided he did so prior to the convening date of the continuation board which considered him, effectively make, change or revoke an election under the Eetired Serviceman’s Family Protection Plan.
*698 Section 3 is, of course, itself far from unequivocal. Insofar as presently relevant, Section 3(Z) does -no more tban raise, albeit in slightly different form, the same issue Section 288(a) does. Section 3(n) (and Section 3(q), on which defendant places primary reliance) are patently savings provisions, designed to insure that any officer not recommended for continuation on active duty (and, parenthetically, therefore no longer eligible for promotion) who chose to depart the active service of the Coast Guard at any time after his failure to be recommended for continuation would receive the same lump-sum payment, and annuity election rights, he would have been afforded had he remained on active duty for whatever longer period he might. Since attrition, particularly in the ranks of captain and commander, was a basic objective of the 1963 act, and for other reasons,[18] these provisions make excellent sense. Carefully considered, however, defendant’s arguments respecting Section 3 are insufficient to warrant the result it seeks.
In sum, each plaintiff retired “on June 30 * * *” is, for the reasons and in the circumstances above stated, entitled to retired pay computed on the basis of the basic pay rates effective July 1 of the year in which retired. Each plaintiff retained on active duty following June 30 and subsequently retired, for physical disability or otherwise, is entitled to no less. Determination of the exact amount of each plaintiff’s individual recovery is reserved for further proceedings pursuant to Pule 131 (c).
FiNdings of Fact
1. Each of the 18 plaintiffs in this case has completed more than 30 years of active commissioned service in the (Regular) United States Coast Guard, and has been retired from active service in the grade of captain.
2. (a) Plaintiffs Edward P. Chester, Jr. (1), James A. Hyslop (3), Edwin B. Ing (4), Henry P. Kniskern, Jr. (5), *699 Corliss B. Lambert (6), Harold Land (7), Charles E. Leis-ing (8), George T. Murati (9), Arthur Pfeiffer (10), and Benjamin D. Shoemaker, Jr. (15), completed 30 years of active commissioned service in the Coast Guard during the fiscal year ending June 30,1968.
(b) Plaintiffs Harry F. Frazer (2), Victor Pfeiffer (11), William R. Riedel (12), Charles E. Sharp (13), Julian J. Shingler (14), David William Sinclair (16), Warner K. Thompson, Jr. (17), and Ralph M. West (18), completed 30 years of active commissioned service in the Coast Guard during the fiscal year ending June 30,1969.
3. (a) Section 288(a), Title 14, United States Code (1964) (hereafter “Section 288”) provided in part that each officer of the Regular Coast Guard serving in the grade of captain not selected for promotion to the grade of rear admiral “shall, if not earlier retired, be retired on June 30 of the fiscal year in which he * * * completes thirty years of active commissioned service in the Coast Guard.”
(b) Section 291, Title 14, United States Code (1964) (hereafter “Section 291”) provided in part that any regular commissioned officer who has completed 20 years of active military service, at least 10 years of which were active commissioned service, may, upon his own application, be retired from active service.
(c) Section 292, Title 14, United States Code (1964) (hereafter “Section 292”) provided in part that any regular commissioned officer who has completed 30 years of active military service, may, upon his own application, be retired from active service.
4. During the fiscal year in which each plaintiff completed 30 years of active commissioned service in the Coast Guard, he was not selected for promotion to the grade of rear admiral. Each plaintiff was therefore subject to mandatory retirement pursuant to Section 288 (finding 3 (a)). Each plaintiff was also entitled to voluntary retirement pursuant to both Section 291 (finding 3(b)) and Section 292 (finding 3(c)).[1] *700 Each plaintiff requested voluntary retirement under Section 291 or 292. Those who completed 30 years of service during the fiscal year ending June 30,1968, made such a request after issuance of a notice of mandatory retirement (finding 5). For reasons not here material, no notice of mandatory retirement was issued to any plaintiff retired in 1969.
5. In February 1968, the Commandant of the Coast Guard directed to plaintiffs Chester, Hyslop, Ing, Kniskern, Lambert, Land, Leising, Murati, Arthur Pfeiffer, and Shoemaker, a letter captioned “Ketirement; information concerning”, advising that each would be retired on July 1, 1968, pursuant to Section 288.
6. (a) In June 1968, the Commandant issued to plaintiffs Hyslop, Ing, Kniskern, Lambert, Land, Leising, and Arthur Pfeiffer, individual orders captioned “Ketirement from active duty; detachment orders; travel”, and stating in part that pursuant to Section 291 (or Section 292) he was detached from all duties effective June 30, 1968.
(b) The DD Form 214N, “Armed Forces of the United States Keport of Transfer or Discharge” of each of these seven plaintiffs shows the type of his transfer or discharge to be “Retired” or “Ketirement”, with an effective date of June 30, 1968. Under the Remarks section of the DD Form 214N issued to several of them, the effective date of permanent retirement is indicated as July 1, 1968.
(c) Coast Guard Form CGHQ-3125, “Retired Payroll Change Data”, was prepared for each of these seven plaintiffs. Each of the said forms reflects that the respective plaintiff was retired July 1,1968; most of them also state that “Pay this period is for 1-31 July 1968”. Coast Guard Form CGHQ-3884, “Retired Pay Data — Military” prepared for each of them reflects a date of retirement of July 1, 1968.
7. (a) Plaintiff Murati, who had been advised in February 1968 that he would be retired on July 1,1968, pursuant to Section 288, subsequently underwent medical evaluation. On September 25,1968, the Commander, Third Coast Guard District, issued to him orders captioned “Retirement from active duty; detachment orders; travel”, stating in part that *701 pursuant to Section 292 lie was detached from all duties effective September 30,1968.
(b) Plaintiff Murati’s DD Form 214N shows the type of his transfer or discharge to be “Retired” with an effective date of September 30, 1968. Under the Remarks section of his DD Form 214N the effective date of permanent retirement is indicated as October 1, 1968.
(c) Plaintiff Murati’s Coast Guard Form CGHQ-3125 reflects that he was retired October 1,1968. His Coast Guard Form CGHQ-3884 reflects a date of retirement of October 1, 1968.
8. (a) Plaintiff Chester, who had been advised in February 1968 that he would be retired on July 1, 1968, pursuant to Section 288, subsequently underwent medical evaluation. On November 30, 1968, the Commander, Twelfth Coast Guard District, issued to him orders captioned “Physical Disability Temporary Ketirement”, stating in part that, pursuant to Chapter 61, Title 10, United States Code, he was “hereby detached from all duties at this command effective this date and * * * to be placed on the Physical Disability Temporary Retired List effective 1 December 1968 * *
(b) Plaintiff Chester’s DD Form 214N shows the type of his transfer or discharge to be “Temporary Disability Retirement”, with an effective date of November 30,1968.
(c) Plaintiff Chester’s Coast Guard Form CGHQ-3125 reflects that he was retired December 1,1968, and that “Pay this period shows thru 12/1-1-31/69”. His Coast Guard Form CGHQ-3884 reflects a date of retirement of December 1,1968.
9. (a) Plaintiff Shoemaker, who had been advised in February 1968 that he would be retired on July 1,1968, pursuant to Section 288, subsequently received orders, dated June 5, 1968, placing him in a limited duty status “upon receipt”. Such orders stated that, effective June 29, 1968, he was “detached of all duties * * and that further orders would be issued in connection with his disability retirement. On July 9, 1968, the Commander, Thirteenth Coast Guard District, issued to him orders captioned “Orders; temporary retirement from active duty; travel”, stating in part that, pursuant to Chapter 61, Title 10, United States Code, effective *702 July 9,1968, he was “hereby temporarily retired [for disability] and placed on the temporary retired list effective 10 July 1968 * * *.”
(b) Plaintiff Shoemaker’s DD Form 214N shows the type of his transfer or discharge to be “Placed on Temporary Disability Retired List”, with an effective date of July 9, 1968;
(c) Plaintiff Shoemaker’s Coast Guard Form CGHQ-3125 reflects that he was retired July 10, 1968. His Coast Guard Form CGHQ-3884 reflects a date of retirement of July 10,1968.
10. (a) In May and June 1969, the Commandant issued to plaintiffs Victor Pfeiffer, Riedel, Shingler, Sinclair, Thompson, and West, individual orders captioned “Retirement from active duty; detachment orders; travel”, and stating in part that pursuant to Section 291 (or Section 292) he was detached from all duties effective June 30, 1969.
(b) The DD Form 214N of each of these six plaintiffs shows the type of transfer or discharge to be “Retired” or “Retirement”. For plaintiffs Victor Pfeiffer and Shingler, the effective date shown was July 1, 1969. For plaintiffs Riedel, Sinclair, Thompson, and West, the effective date shown was June 30, 1969. Under the Remarks section of the DD Form 214N issued to plaintiffs Riedel, Sinclair, and Thompson, the effective date of permanent retirement or placement on the retired rolls of the Coast Guard is stated to be July 1,1969.
(c) Coast Guard Form CGHQ-3125 was prepared for each of these six officers. Most of the said forms reflect that the respective plaintiff was retired July 1,1969. Coast Guard Form CGHQ-3884 prepared for each of them reflects a date of retirement of July 1,1969.
11. (a) Plaintiff Frazer, who had been advised in March 1969 that he would be retired on July 1, 1969, pursuant to Section 292, subsequently underwent medical evaluation. On July 17, 1969, the Commandant issued to 'him orders captioned “Retirement from active duty; detachment orders; travel”, stating in part that pursuant to Chapter 61, Title 10, United States Code, he was detached from all duties effective July 30, 1969.
*703 (b) Plaintiff Frazer’s DD Form 214N shows the type of his transfer or discharge to be “Retired” and the effective date to be July 30,1969. Under the Remarks section of his DD Form 214N, the words “Effective Date of Temporary Disability Retirement is 31 July 69” appear.
(c) Plaintiff Frazer’s Coast Guard Form CGHQ-3125 contains the words “Retired 1 August 69”. His Coast Guard Form CGHQ-3884 shows the date of his retirement as August 1,1969.
12. (a) Plaintiff Sharp, who had requested in April 1969 that he be retired July 1,1969, pursuant to Section 292, subsequently underwent medical evaluation. On July 9,1969, the Commander, First Coast Guard District, issued to him orders captioned “Retirement from active duty; detachment orders; travel”, stating in part that pursuant to Chapter 61, Title 10, United States Code, he was detached from all duties effective July 9, 1969.
(b) Plaintiff Sharp’s DD Form 214N shows the type of his transfer or discharge to be “Temporary Retirement”, and the effective date to be July 9,1969. Under the Remarks section of his DD Form 214N, the effective date of his temporary retirement is shown to be July 10,1969.
(c) Plaintiff Sharp’s Coast Guard Form CGHQ-3125 reflects that he was retired July 10, 1969. His Coast Guard Form CGHQ-3884 shows the date of his retirement to be July 10, 1969.
13. Those plaintiffs who were not retained for medical evaluation following June 30, 1968, and June 30, 1969, respectively (see findings 7-9, 11, and 12), received basic (or active duty) pay and allowances to and including June 30 of the year in which retired. Those plaintiffs retained on active service for medical evaluation following June 30, 1968, and June 30, 1969, respectively, received basic pay and allowances in accordance with statute while so retained.
14. By letter dated August 7, 1968, the Coast Guard advised the Comptroller General that retirement pay for plaintiff Ing “and those in similar cases where the authority for retirement has been changed is being paid * * *” on the basis of the basic pay rates in effect on June 30, 1968. Decision *704 whether plaintiff Ing might be paid retired pay computed on rates of basic pay effective July 1, 1968, was requested. In Comp. Gen. Dec. B-165038, January 6, 1969, the Comptroller General responded that “under the specific provisions of 14 U.S.C. 288(a), Captain Ing was mandatorily retired on June 30, 1968, and consequently, the computation of his retired pay under the provisions of 14 U.S.C. 423 effective from July 1, 1968, is required to be based on the rates of active duty basic pay which were in effect on June 30,1968.”
15. On March 20, 1969, the Coast Guard advised the Comptroller General of (inter alia) the facts of plaintiff Chester’s situation, and that he was being paid retired pay computed on the basis of the basic pay rates in effect on • June 30, 1968. Decision whether he (and others similarly situated) were entitled to retired pay computed on the basis of the rates of basic pay effective July 1, 1968, was requested. In Comp. Gen. Dec. B-165038, June 2,1969, the Comptroller General answered that question in the negative, in effect holding that absent some provision exempting “officers * * * physically disqualified for further active service from the positive requirements of [Section 288(a)] providing for mandatory retirement on a certain date, subject to the Uniform Retirement Date Act, the fact that the [Coast Guard] failed to accomplish his involuntary retirement on the date required by law did not add to his rights in any way in computing the amount of retired pay to which he was entitled.”
16. In the meantime, by letter dated April 3, 1969, the Coast Guard submitted to the Comptroller General a memorandum of law urging that Comp. Gen. Dec. B-165038, January 6, 1969, (finding 14) was wrong, and requesting “reconsideration of the issues * * In Comp. Gen. Dec. B-165038, June 2, 1969, the Comptroller General reaffirmed his prior decision insofar as it related to plaintiff Ing (and others similarly situated).
17. Shortly after the June 2, 1969, decisions mentioned in findings 15 and 16, the Coast Guard advised each plaintiff retired in 1968 that the Comptroller General had, at the Coast Guard’s request, reconsidered his earlier decision, but had reaffirmed it.
*705 18. (a) Each plaintiff listed in finding 2(a) bas been paid retired pay computed on the basis of the 'basic pay rates in effect on June 30,1968.
(b) Each plaintiff listed in finding 2 (b) has been paid retired pay computed on the basis of the basic pay rates in effect on June 30, 1969.
Conclusion of Law
Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that each plaintiff is entitled to recover retired pay computed on the basis of the basic pay rates effective July 1 of the year in which he was retired, with the amount of recovery to be determined in further proceedings pursuant to Kule 131(c).

 See findings 3, 4. Section 291 related to voluntary retirement after 20 years of active service, at least 10 years of -which were active commissioned service. Section 292 related to voluntary retirement after 30 years of active service.

 Executive Order No. 11414, June 11, 1968, 33 F.R. 8645; Executive Order No. 11475, June 16, 1969, 34 F.R. 9609; 37 U.S.C. § 203 note (1970).

 The effective date of his retirement was recorded, on several Coast Guard forms, as July 1, 1968. Finding 6.

 While so retained on active duty, plaintiff Chester received basic pay and allowances in accordance with statute.

 There has been neither assertion nor implication that retention on active duty following June 30 was unauthorized or improper, or that post-June 30 retirement was inefficacious. Defendant’s position is only that failure to accomplish an officer’s involuntary retirement on the date required by law does “not add to his rights in any way in computing the amount of retired pay to which he was entitled.” Finding 15. See also 43 Comp. Gen. 742 (1964). If perplexing notions come to mind, they will not, sua sponte, be delineated or discussed. Cf. Richard v. United States, 136 Ct. Cl. 33, 152 F. Supp. 433 (1956).

 Comp. Gen. Dec. B—165038, June 2, 1969, p. 3 (unpublished). There are two decisions bearing this same number and date. The first, cited here and in footnotes 8 and 9, related to plaintiff Ing. See findings 14, 16. The second, discussed infra, related to plaintiff Chester. See finding 15.

 Although the record contains no evidence on this point, plaintiffs apparently have been paid due cost of living increases. In any event, no claim to such increases is here made.

 Comp. Gen. Dec. B-165038, June 2, 1969, pp. 3-4 (unpublished).

 id., at p. 4. The uniform Retirement Date Act, 5 U.S.C. § 8301 (Supp. V, 1965-69) reads as follows:
“(a) Except as otherwise specifically provided by this title or other statute, retirement authorized by statute is effective on the first day of the month following the month in which retirement would otherwise be effective.
“(b) Notwithstanding subsection (a) of this section, the rate of active or retired pay or allowance is computed as of the date retirement would have occurred but for subsection (a) of this section.”

 Parenthetically, the “first became qualified” aspect of the matter Is not directly involved here. The ruling that plaintiffs’ retired pay is to be computed on the basic pay rates in effect on June 30 rests on other grounds hereinafter set forth.

 See also H.R. 5623, 88th Cong., 1st Sess. (1963), and Its companion bill S. 1460, 88th Cong., 1st Sess. (1963).

 “Section 291 [and] 292 * * * are restatements of existing law.” H.R. Rep. No. 583, supra, p. 26.

 “A third principle which the bill adopts is that of terminating most officer careers at 30 years if they have not been separated earlier.” Hearings, House Committee on Merchant Marine and Fisheries, Subcommittee on Coast Guard, Coast and Geodetic Survey, and Navigation, on H.R. 5623, 88th Cong., 1st Sess., June 26, 1963, p. 34; Hearings, Senate Committee on Commerce, Merchant Marine and Fisheries Subcommittee, on S. 1460, 88th Cong., 1st Sess., June 27, 1963, p. 36.

 Defendant’s brief, p. 16.

 Plaintiffs’ main brief, p. 48.

 Section 424 reads as follows:
“The provisions of any section of this title shall not be construed so as to prevent any officer * * * from being placed on the retired list with the highest * » * retired pay to which such officer * * * may be entitled under the provisions of any other section of this title or under the provisions of any other law. * * *

 As plaintiffs correctly observe, defendant’s brief ignores Section 424. Plaintiffs’ reply brief, p. 7.

 The motivation and duty performance of one whose promotion potential has vanished, and whose career is in its terminal stages, might understandably be affected thereby.

 This “finding", made -without independent inquiry, is based on defendant’s .admission of such entitlement. Petition, para. 4; Answer, para. 4.