Hermogenes ABAD et al.

v.

The UNITED STATES.

[In the case of Mary Agnes Bracher, Administratrix of the Estate of Walter Evans Bracher, Plaintiff, No. 43].

No. 49667.

United States Court of Claims.
Oct. 2, 1956.

Thomas M. Gittings, Jr., Washington, D. C., Fred W. Shields and King & King, Washington, D. C., on the brief, for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

This action is brought by the administratrix of the estate of Walter Evans Bracher to recover increased retired pay claimed to have been due the decedent (hereinafter referred to as the plaintiff) under section 208 of the Naval Reserve Act of 1938, as amended by the act of August 10, 1946, 60 Stat. 993, 994, 34 U.S.C.A. § 854g.

The plaintiff first enlisted in the United States Navy on December 11, 1904, for a term of four years and subsequently served continuously through three additional enlistments of four years each and on January 23, 1921, after having completed exactly 16 years of active service for transfer purposes was transferred to the Fleet Naval Reserve, now the Fleet Reserve. From that date, the plaintiff received retainer pay, and later retired pay, at the rate of one-third of his base pay on date of transfer, as increased by longevity.

On July 16, 1941, the plaintiff was recalled to active duty and served 4 years, 2 months and 15 days, and was discharged on September 30, 1945, after having been advanced to the rank of Commissioned Warrant Officer (Chief Gunner), and was advanced on the retired list to that rank. Including the original 16 years, the plaintiff's total active service now amounted to 20 years, 2 months and 15 days. The Navy Department declined to credit plaintiff with this additional active service for the purpose of computing his retired pay at one-half base pay on date of transfer as is the case for those transferring to the Fleet Reserve after 20 years' active service.

Section 208 of the Naval Reserve Act of 1938, as amended by the act of August 10, 1946, supra, provides that enlisted men who have transferred to the Fleet Reserve *after more than 16 years' service* and are later recalled to active service during periods of national emergency may include such additional active duty in the computation of their total service for the purpose of computing their retainer or retired pay. Plaintiff claims that application of this section to his case should result in his retired pay being increased to one-half of his base pay, as increased by longevity and good conduct allowances.

One of the purposes of the legislation creating the Fleet Reserve was to encourage seamen who had served in the Navy to reenlist repeatedly and thus give the Government the benefit of their training and experience. The act of August 29, 1916, 39 Stat. 556, 589–590, therefore gave men who had had 16 years of service the privilege of transferring to the Fleet Naval Reserve in which they would receive substantial pay without performing any considerable amount of active service. The act of February 28, 1925, 43 Stat. 1080, 1087–1088, provided that sailors could transfer to the Fleet Naval Reserve after 16 or more years of service, and that if they had had 16 but less than 20 years of active service they would receive in the Reserve one-third of their base pay, and if they had had 20

or more years of active service they would receive one-half their base pay.

The Naval Reserve Act of June 25, 1938, 52 Stat. 1175, 1178–1179, 34 U.S.C.A. §§ 853, 854b, changed slightly the name of the Reserve, but provided that members of the former Reserve who had transferred to it after active service should have the same pay and allowances under the new act that they had had under the former one. The act provided, for the future, that sailors should be entitled to be transferred to the Reserve upon completion of 16 or more years of active service, and if they had had 16 but less than 20 years of service they should receive one-third pay, and if they had had 20 or more years of service they should receive half pay.

■ Many members of the Reserve were required to perform active duty during the war. For it they of course received active duty pay. But what if this new period of active duty, added to the 16 or more years of active duty which they must have had before being transferred to the Reserve, made 20 or more years of active service? Should they now, upon going back into the Reserve, be "sixteen, but less than twenty" year men, with one-third pay, or "twenty or more" year men, with half pay?

Congress, by the act of August 10, 1946, 60 Stat. 993–994, 34 U.S.C.A. § 854g, amended the 1938 act by adding to it section 208, which contains the language, the interpretation of which is the court's problem in the instant case. The section answers the question posed above by permitting the men to add the new period of active service to the former period, and thus become "twenty year" men with half pay, if the two periods add up to 20 years. This was the general purpose and effect of the section. But because of an unfortunate choice of words, the section as enacted presents a problem of construction.

Instead of using the expression "after sixteen years' naval service" as in the 1916 act, or the expression "sixteen or more years' naval service" as in the 1925 and the original 1938 acts, section 208 said "Whenever enlisted men of the Fleet Reserve, transferred thereto after *more than sixteen* years' service, * * *."

It is clear from the context and background of the statute that Congress used the quoted expression inadvertently. It is almost impossible to conjure up any possible reason why it would have been used intentionally. If it had been, it would mean that Congress was classifying all sailors as follows:

(1) Those who had originally served less than 16 years, and who therefore never became eligible to be transferred to the Reserve, and were, of course, never so transferred.

(2) Those who had served exactly 16 years, had thus become eligible for transfer to the Reserve, had been so transferred and had later performed further active service in the war.

(3) Those who had served one minute or more after completing 16 years, had become eligible for transfer to the Reserve because of the 16 years' service, without regard to the extra minute, had so transferred and had later performed further active service in the war.

What such a classification means is that the important benefits granted by section 208 are denied to sailors otherwise eligible because of a difference of a day, or perhaps an hour or a minute, in the time of their active service. It is not as though *more than 16 years'* service was required for transfer to the Reserve. That had never been the rule, and was not made the rule by section 208. These 16-year men were in the Reserve. The Government would have us say that Congress, having by its legislation since 1916 invited sailors to join the Reserve after 16 years' service, which would be the exact time for the completion of a fourth term of enlistment, was saying to those who had responded to that invitation that they, because they had not happened to be at sea, or in the hospital, or had not for some other for-

tuitous reason had their discharge delayed for a day, or had not re-enlisted but secured their discharge before completing 20 years' service, should be singled out of all the reservists as not entitled to the benefits of section 208.

It is not a question of "drawing the line somewhere." Congress had repeatedly drawn the line at 16 years, the time when one became eligible to join the Reserves. It is rather a question of drawing the line at a place where, as it seems to us, no rational person would intend to draw it.

It is no mark of proper deference to Congress to throw a piece of legislation back in its face because it has committed a verbal error of the kind to which all humans are prone, when it is perfectly obvious what Congress meant. Congress has more important things to do than to clarify statutes which are already clear, when read with the understanding which courts may be expected to possess. See Holy Trinity Church v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226; 3 Sutherland, Statutory Construction, § 6004 (3d ed. 1943).

The legislative history recited on pages 3 and 4 of the Government's reply brief shows that the relevant language of section 208 first appeared as "after sixteen or twenty" years' service. That language was objectionable for a historical reason which is elaborated on page 12ff of the plaintiff's brief. The bill was amended in committee and the language here in litigation was substituted. It is not infrequently the case that, when one is rewriting with the purpose of avoiding a mistake which he has discovered, the attention which he devotes to that purpose makes him inattentive to other possible mistakes. That must have occurred here.

The Government cites Lambert v. United States, 101 F.Supp. 767, 121 Ct. Cl. 333. There the officer's classification was based not upon a period of one day, as is urged in the instant case, but three years, as is customary for Army

pay periods. That case has no relevance here. As to the case of Liberty v. United States, 120 Ct.Cl. 274, we think it was wrongly decided and should be overruled.

The defendant's motion for summary judgment is denied and the plaintiff's similar motion is granted.

Plaintiff is therefore entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

LARAMORE, WHITAKER, and LITTLETON, Judges, concur.

JONES, Chief Judge (dissenting).

In a case with an identical fact situation, this court has already decided that section 208, supra, applies only to members of the Fleet Reserve who had completed *more than* 16 years of active service when they transferred to the Reserve and not to those who transferred with *exactly* 16 years' service. Liberty v. United States, 120 Ct.Cl. 274.

The majority holds that Congress could not have meant one rate of retirement pay for those who have exactly 16 years of service and another rate for those who have had 16 years and 1 day, for example. However, enlistments, as well as reenlistments, in the Navy are not ordinarily for a day but for a period of years.

Practically the same principle was involved in the case of Lambert v. United States, 101 F.Supp. 767, 121 Ct.Cl. 333. In that case the plaintiff had retired with exactly 30 years of service. He was claiming a 50 percent addition to his retired pay under a statute which granted such addition for over 30 years' service. The court dismissed the petition stating:

"At the time of his retirement plaintiff was not drawing the active duty pay of his grade with over 30 years of service. * * * Had he

started on the next period of service he would have been entitled to draw the increased pay of that period and would have been entitled to the 50 percent increase rather than the 45 percent which was allowed."

It seems to me that what the Congress had in mind in enacting the statute involved in the case at bar was to give the increased retirement pay to one who had completed 16 years of service and had reenlisted for another 4-year period and at some time during the 16- to 20-year period or at the end thereof had transferred to the Fleet Reserve.

The majority opinion seeks to excuse its refusal to accept the statute as written by saying that to do so would deny increased retirement pay to one who had exactly 16 years' prior service and grant it to one who had a longer period of service, however small the additional service. Therefore, it reasons, Congress could not have meant what it plainly said.

Any law that requires a certain period of service as a condition to receiving increased retirement will automatically have the effect of denying that increase to anyone who had service less than the prescribed period—even one day.

The majority opinion intimates that no rational person would draw the line where the literal wording of the statute draws it. It would nullify the provision on the ground that as written it would give the privileges to one who had served 16 years and one minute, and deny it to one who had served exactly 16 years. Well, the same statute denies all such privileges to anyone who had served one minute less than 16 years, even as the majority interprets it. Why not nullify the whole statute? A court gets into interminable difficulties when it crosses the border of its legitimate sphere.

I freely concede that there are instances when a clause in a statute is susceptible of two interpretations, one of which will lead to absurd and the other to reasonable results, and that in such instances the court properly makes the reasonable interpretation. But no such condition exists here. Evidently what the Congress intended was primarily to give an added inducement to one having 16 years' service to reenlist for an additional definite period.

It is very clear that the Congress knew exactly what it was doing. It had before it the previous expressions in the other laws that had been enacted. It manifestly made the breaking point at a place beyond the 16 years of service. Section 208 provides increased retirement pay "whenever enlisted men of the Fleet Reserve, transferred thereto *after more than 16 years' service*" (emphasis supplied) perform active duty after July 1, 1925.

The men who served on the Naval Affairs Committees of both the House and the Senate were men who were experienced in legislative matters. It is not proper for a court whose members are not so experienced to construe perfectly clear language as meaning something else than what is clearly stated. This court, any court, is sowing dragon's teeth when it invades the legislative field and undertakes to construe a statute as meaning something else than what it actually states. The majority has taken a legislative provision that is perfectly free from ambiguity, and because, forsooth, it does not think Congress should have enacted that particular clause, has completely read it out of the statute.

The statute is clear and its terms should govern. Missouri Pacific Ry. Co. v. United States, 53 Ct.Cl. 12, 16; Leonard v. United States, 80 Ct.Cl. 147, 151; Third Scottish American Trust Co. v. United States, 37 F.Supp. 279, 93 Ct.Cl. 160, 167. Changes in policy are matters that are within the discretion of the Congress and are not properly determined by the courts.

Plaintiff's motion for summary judgment should be denied, the defendant's motion granted, and the petition dismissed.