**James J. CONLON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 402–84C.**

United States Claims Court.

April 19, 1985.

Thomas M. Gittings, Jr., Washington, D.C., Atty. of record, for plaintiff.

Michael A. Gordon, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, Washington, D.C., and Major Charles Beardall, Dept. of Army, of counsel.

OPINION

ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This is a suit by a commissioned officer in the United States Army for additional active duty pay and variable housing allowance for the period from June 19, 1981 to date. The question presented is whether or not a commissioned officer who previously served exactly 4 years as an enlisted member of the Army is entitled to receive the rate of pay provided by 37 U.S.C. § 1009 for "Commissioned officers who have been credited with over 4 years active service as enlisted members."

The facts alleged in the complaint are not disputed by defendant. Plaintiff, James Conlon, originally enlisted in the United States Army on September 6, 1973. After performing *exactly* 4 years of satisfactory enlisted service, Conlon was discharged on September 5, 1977. On June 2, 1979, he received a commission as a second lieutenant, pay grade O–1, in the Finance Corps, United States Army Reserve. He entered upon active duty on June 19, 1981, and has remained on active duty continuously since that date. He was promoted to the rank of

first lieutenant, pay grade O–2, on June 2, 1982.

Title 37 U.S.C. § 203(a), provides that "the rates of monthly basic pay for members of the uniformed services within each pay grade are those prescribed in accordance with section 1009" of the same title. Section 1009 sets forth a schedule of monthly basic pay for commissioned officers at pay grades O–1 through O–10 divided into 15 columns. The first column is for those having 2 or less years of service. The headings on the other 14 vary from "Over 2 Years" to "Over 30 Years" of service, the first three being at one year intervals, the next ten at 2 year intervals, and the last two being respectively at 4 and 5 year intervals. Section 1009 also contains another schedule for "Commissioned officers who have been credited with over 4 years active service as enlisted members." This prescribes the monthly basic pay for pay grades O–1 to O–3 in twelve columns, beginning with those having "Over 4 years" of service and ending with those having "Over 30 years" of service.

Plaintiff contends that, beginning in 1981 when he entered on active duty as a second lieutenant after completion of 4 years of service as an enlisted member, he was entitled to receive the pay rates set forth in the latter schedule for those having over 4 years of service. Defendant maintains that because plaintiff did not have over 4 years of service as an enlisted member he was only entitled to the pay rate set forth in the first schedule for commissioned officers having 2 years or less of service.

A literal reading of the statute supports defendant's position, since plaintiff did not have over 4 years of active service as an enlisted member before he became a commissioned officer. The best evidence of legislative intent is, of course, the language of the statute. Plaintiff concedes that the language of the statute is contrary to his position but contends that such language reflects merely an inadvertence, and relies instead on what he claims to be an overriding legislative intent reflected in the legislative history of the statute. The difficul-ty with the plaintiff's position is, however, that the legislative history he relies upon is not so unambiguously in favor of plaintiff's construction that the expressed statutory language may fairly be deemed to be merely an inadvertence.

The pertinent provisions of the statute at issue originated in the Military Pay Act of 1958, Pub.L. 85–422, 72 Stat. 122 (1958). The purpose of the provision granting commissioned officers with over 4 years of enlisted service increased pay was stated in the Senate Committee Report to be as follows (S.Rep. No. 1472, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad. News 2465, 2470):

> This provision was included in view of the fact that the modifications made in the present longevity system meant that in the absence of such a provision, junior officers with substantial enlisted service would have received no recognition for such service. For example, whereas under the present pay scale second lieutenants accrue longevity pay increases up to 14 years of service, the bill would cut off longevity after 3 years of service. It is necessary to continue to provide an incentive for enlisted men to aspire to become commissioned officers and to qualify for such appointment. Thus, the special pay scale would recognize their former enlisted service following their appointment as commissioned officers. In the absence of such a table, many such enlisted men would in effect be frozen paywise upon appointment to commissioned officer rank.

First, plaintiff refers to the House Committee on Armed Services Report (H.R. Rep. 1538, 85th Cong., 2d Sess. 3), which states in part as follows:

> It will be observed that under the proposed legislation no officer will receive an additional increment in pay beyond his normal promotion point except for a special pay scale which is applicable only to commissioned officers who have had *4 or more years* of cumulative years of service credited for pay purposes as an enlisted member. [Emphasis added.]

However, plaintiff ignores two other excerpts on the same page of the same report, which are inconsistent with his contention on the issue, to wit (*id.*):

> Under the proposed legislation, second lieutenants will receive longevity increases up to 3 years of service, but with no increases beyond that point except for those paid under the special pay scale who had *over 4 years of enlisted service.*
>
> \* \* \* \* \* \*
>
> The special pay table for enlisted personnel with *over 4 years of service* makes no provision beyond the grade of captain for at this point the average officer with enlisted service will be eligible for the increased pay of the higher rank if promoted to the rank of major and beyond. [Emphasis added.]

Next, plaintiff relies upon the following excerpt from a statement by Representative Charles E. Bennett, a member of the House Committee, during debate on the House floor, on March 25, 1958 (104 Cong. Rec. 5289 (1958)):

> To take care of the individual who goes from an enlisted to officer status we have included a separate pay table for those officers who have had *at least 4 years* of prior enlisted service. The effect of this table is to take the basic officer grades and extend the longevity increases for those grades for several years past the cutoff date applicable for the officer with no prior service. [Emphasis added.]

However, plaintiff overlooks the contrary understanding reflected in a statement by the chairman of the House committee, Representative Paul J. Kilday, in explanation of the bill on the same day on the House floor (*id.* at 5280):

> To provide adequately for the enlisted man who wants to step up to officer grade the bill before you contains a special pay table applicable to officers who have had *more than four years* prior enlisted service. \* \* \* [Emphasis supplied.]

Then, plaintiff relies upon an excerpt from a report of the Senate Armed Services Committee, which states (S.Rep. No. 1472, 85th Cong. 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad.News, 2465, 2479):

> The bill as passed by the House required *only 4 years* of cumulative service in order to be eligible for the special scale. The Senate amended this provision *by requiring 6 years* of active service in order to be eligible for the special scale. [Emphasis added.]

However, plaintiff fails to note a statement inconsistent with his argument in the same committee report (*id.,* 1958 U.S.Code Cong. & Ad.News at 2470):

### SPECIAL PAY SYSTEM FOR JUNIOR OFFICERS WITH PRIOR ENLISTED SERVICE

> The bill contains a special pay table for junior officers in grades O–1 through O–3 who have *more than 6 years* of active service of enlisted service. \* \* \*
>
> The effect of the special table is to provide additional longevity pay increments for junior officers who have *more than 6 years* of active service as an enlisted member. \* \* \* [Emphasis supplied.]

Finally, plaintiff relies upon an excerpt from the House Conference Committee report which states (H.R.Rep. 1701, 85th Cong., 2d Sess., *reprinted in* 1958 U.S. Code Cong. & Ad.News, 2491, 2494):

> The House bill contained a special pay scale with respect to individuals who attained commissioned service after having served as enlisted members. Under the House bill, the longevity points in the grades of second lieutenant, first lieutenant, and captain were extended beyond the normal promotion points for those enlisted men who had *4 or more years* of cumulative service as enlisted members. The Senate amendment revised this provision so as to make it applicable only to enlisted personnel who attained commissioned status with *6 or more years* of active duty as enlisted members.

The managers for the House and Senate agreed to reduce the years of service from *6 years to 4 years* with respect to these special longevity pay scales, and also agreed to that portion of the Senate amendment which makes this special provision applicable only to individuals who served on active duty as enlisted members. [Emphasis added.]

But again plaintiff ignores other language inconsistent with its contention in the same report, namely, the table headed "Commissioned officers who have been credited with over 4 years' active service as an enlisted member and" under the heading "Years of Service", the column headed "Over 4 Years." 104 Cong.Rec. 8414 (1958).

Plaintiff also argues that the term "over 4 years" in the statute should be read to mean merely "4 years", because 4 years represents the expiration of a normal term of enlistment, and that Congress had no particular reason for providing credit only for those who had been enlisted members for more than 4 years. However, a certified copy of Army Regulation 601–210, entitled "Regular Army Enlisted Program", in effect from October 2, 1972 through February 1980, shows that enlistments in the regular Army were then authorized for periods of 2, 3, 4, 5 or 6 years, and that the total authorized enlistment periods for prior service personnel could total anywhere from 4 through 27 years. Thus, no necessary inference may be drawn that Congress contemplated prior enlistment periods of only 4 years. Moreover, Congress could have intended to reward specially only those enlisted members who reenlisted and were then promoted to commissioned officers during their second or following tour of duty. *Cf. Lambert v. United States*, 121 Ct.Cl. 333, 101 F.Supp. 767 (1952).

Where the congressional intent is clear but may be impeded by a literal application of a statute, a court may enforce the underlying congressional policy and ignore the plain meaning of the statutory language. *Helvering v. New York Trust Co.*, 292 U.S. 455, 464–65, 54 S.Ct. 806, 808–09, 78 L.Ed. 1361 (1934); *Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892); *Ocean Drilling & Exploration Co. v. United States*, 220 Ct.Cl. 395, 402–03, 600 F.2d 1343, 1347 (1979). This rule of construction, however, depends upon a showing of overriding and unambiguous intent, and is applied generally in exceptional circumstances. *Tennessee Valley Authority v. Hall*, 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 2298 n. 33, 57 L.Ed.2d 117 (1978); *Hart v. United States*, 218 Ct.Cl. 212, 226, 585 F.2d 1025, 1033 (1978). In *Hart*, the court stated (218 Ct.Cl. at 227, 585 F.2d at 1033):

> The Court has ordinarily expressed a wary attitude in dealing with legislative history invoked by one seeking to expand the literal scope of an Act * * *. This hesitation in resorting to legislative history to contradict plain language is timely. We note that with the swiftly growing use of the staff system by Congress, many congressional documents may be generated that are not really considered fully by each or perhaps any legislator. Thus, committee reports and the like are perhaps less trustworthy sources of congressional intent than they used to be, and less than the actual wording of the legislation, which one would hope received more thorough consideration prior to enactment. If there is inadvertent error either in the statute or in the committee report, the offender is more likely to be the latter, surely.

Since the original enactment of this statute in 1958, Congress has amended its provisions 14 different times.[1] It is reason-

---

**1.** Pub.L. 87–649, 76 Stat. 456 (1962); Pub.L. 88–132, § 2, 77 Stat. 210 (1963); Pub.L. 88–422, § 1, 78 Stat. 395 (1964); Pub.L. 89–132, § 1, 79 Stat. 545 (1965); Pub.L. 90–207, § 1(1), 81 Stat. 649 (1967); Pub.L. 91–278, § 3(2), 84 Stat. 306 (1970); Pub.L. 92–129, Title II § 201, 85 Stat. 355 (1971); Pub.L. 92–455, § 3, 86 Stat. 761 (1972); Pub.L. 93–419, § 2, 88 Stat. 1152 (1974); Pub.L. 94–361, Title III § 303, 90 Stat. 925 (1976); Pub.L. 95–79, Title III § 302(a)(2), 91 Stat. 326 (1977); Pub.L. 96–343, § 6(b), 94 Stat. 1127 (1980); Pub.L. 97–60, Title I § 102(a), 95 Stat. 992 (1981); Pub.L. 98–94, Title IX § 902(a), 97 Stat. 635 (1983).

able to assume that if the language of the original statute did not truly reflect the intent of Congress, it would have corrected it in one of the amendments.

To support his position, plaintiff relies on *Abad v. United States*, 136 Ct.Cl. 404, 144 F.Supp. 951 (1956). There it was held that a statute which granted additional benefits to members of the Fleet Naval Reserve who had served "more than sixteen years" and were recalled to active duty during a period of national emergency, covered one who had served only exactly 16 years. It reasoned that the statutory language was used inadvertently by Congress because the legislative history demonstrated a legislative intent to benefit those reservists who had served 16 or more years. To avoid the effect of the statutory language the court was able to rely upon a clear and unambiguous legislative history. *Id.* at 406–08, 144 F.Supp. 951. Also as stated by the court (*id.* at 408, 144 F.Supp. 951):

> It is not a question of "drawing the line somewhere." Congress had repeatedly drawn the line at 16 years, the time when one became eligible to join the Reserves. It is rather a question of drawing the line at a place where, as it seems to us, no rational person would intend to draw it.

But the rationale of *Abad* does not support the argument that every "more than" a stated number of years includes such number of "years or more". Here by contrast, the legislative history is not unambiguously in favor of the construction urged by plaintiff, nor is the choice of "Over 4 years" inherently irrational.

### Conclusion

■ Plaintiff has failed to make a persuasive showing that when Congress provided in 37 U.S.C. § 1009 that commissioned officers receive credit for over 4 years of prior active service as enlisted members it meant to grant credit for those having exactly 4 years of active service.

Defendant's motion for summary judgment is allowed and plaintiff's cross-motion is denied. Judgment will be entered dismissing the complaint and allowing costs to the defendant.